W. D. TINSLEY, ET AL. *v.* W. W. TINSLEY, ET AL.

[Abstract Kentucky Law Reporter, Vol. 7—289, 295.]

**Execution of Deed of Conveyance.**

Where the owner of land who has aided his daughter in raising her family and assisted one of his grandsons, attempts by deed to convey his land to such daughter and grandson, and the land embraces practically all of his estate, leaving nothing for his other deserving children, and there is great doubt whether such deed was

ever delivered, the court will be inclined to hold that there was no delivery. The execution of a deed consists both of its signing and delivery.

**Conveyance to Defraud Creditors.**

Where the owner of land, being surety on certain sheriff's bonds and believing he is about being made a bankrupt, conveys his land to certain members of his family, such conveyance is binding upon him but not on such creditors, and children receiving nothing in such conveyance can not have the deed set aside because made to defeat creditors.

APPEAL FROM KNOX CIRCUIT COURT.

October 8, 1885.

OPINION BY JUDGE PRYOR:

It is apparent from the record before us that the claimants under the conveyance of 1878 by Wm. Tinsley, Jr., paid no moneyed consideration for the land conveyed, and that their ancestor and grantor was contributing to their support instead of being supported by them. There was no reason for his selecting his grandson, Wm. Tinsley, Jr., and his daughter, Mrs. Ingram, as the sole objects of his bounty, or for placing the greater part of his estate in their hands, vesting them with the title to the exclusion of his other children. He seems to have permitted them to reside upon and cultivate his land, free of charge or rent, and aided his daughter in raising her children; still, when he undertakes to give to her and his grandson the bulk of his estate, in fact all of it of much value, in the absence of convincing testimony as to the delivery of the deed, which is the real issue in this case, this court (as did the court below) would be inclined to take that view of the question presented that would result in dividing the estate in equal portions between those who had the same claims upon his bounty.

The grantor at the time he executed the conveyance was advanced in years, and, being surety on certain sheriffs' bonds, felt that he was about being made a bankrupt by reason of his liability as such, and executed the conveyance with a view of defeating any judgment that might be rendered against him. This prompted the execution of the deed, and if delivered to the grantees it passed the title, and the fact that the other heirs may lose the estate is no cause for

avoiding the conveyance. While creditors could attack it, if his ancestor could not, his heirs are equally bound, and can not avail themselves of such a defense.

This deed was made in the year 1878, and was not recorded until the year 1880. It was written by the clerk of the Knox County Court, at the residence of the grantor. The clerk seems to have written at the instance alone of the old man, and without any explanation from him as to the object in view. This is persuasive of the fact that his purpose in making the conveyance was to prevent the state from subjecting the land to the payment of the defalcation by the sheriff. If intended for his daughter and grandson, by reason of his preference for them, there was motive for his concealing that fact from the clerk to whom he had confided the possession of the instrument, but there is a strong reason for his failing to make any statement that would conduce to show that his purpose was to evade his liability as surety.

The grantor handed the deed to the clerk, and told him to keep it until he ordered it to record. The clerk left with the deed and never saw the grantor afterwards. The clerk thinks that shortly before the old man's death, Ingram came to his office and said he had an order from the grantor to have it recorded. Whether the order was exhibited he is in doubt, but thinks it was. There is some mistake by either the clerk or young Tinsley, a grantee in the deed. The latter says he had the deed recorded after his grandfather's death. As before stated we perceive no reason for his instructions to the clerk to keep the deed from record until notified by the maker to record it, if the grantor really intended the grantees to have the land. If there was a valuable consideration, or that of love and affection alone, the deed having been fully executed, there was no necessity for delaying its record, or for its delivery to the clerk instead of the beneficiaries; but there is plain reason for such action on the part of the grantor if his purpose was, as we think is clearly shown, to prevent the sale of his property by reason of his suretyship for the sheriff. If he had had the deed written, acknowledged and delivered to the clerk as if made liable, his direction to the clerk to record it would have been given on the idea that their agreement to support him in the future would sustain the conveyance as against the claim of the state.

Mrs. Ingram says about five or six weeks after the deed was writ-

ten her father directed her husband to go to town and tell the clerk to record the deed, and gave an order to that effect, that was written by her husband and signed by her father; yet the deed was never recorded until after his death, and young Tinsley says he then had it recorded, but had gone two or three times before for that purpose. The order is not produced; and a conveyance of such importance to the appellees, and one that they had never seen, so far as this record shows, until after the old man's death, they permit to remain with the clerk for two years, and then it is not recorded until the grantor is in his grave.

He had made a will by the provisions of which his estate was to be divided equally between his children and their descendants. This will Mrs. Ingram says she threw into the fire at the instance of her father; and while her statement and perhaps her belief is that her father made her the object of his bounty because of her kindness to him, we must adjudge from the facts of the record that there was no delivery of the deed, and that his land descended to his heirs at law.

Judgment *affirmed.*

*Jno. W. Rodman, Jno. Goodin,* for appellants.
*Jno. L. Scott, J. M. Unthank,* for appellees.